IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JEREMY BRAY,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 3:21-CV-191-MAB |
| | ) |
| **MICHAEL FORDSON,** | ) |
| | ) |
|       **Defendant.** | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendant Michael Fordson (Doc. 48). For the reasons explained below, the motion is granted.

### BACKGROUND

In February 2021, Plaintiff Jeremy Bray, an inmate in the Illinois Department of Corrections, filed this lawsuit pursuant to 42 U.S.C. § 1983 for purported deprivations of his constitutional rights when he was arrested in March 2019 and while he was detained at the St. Clair County Jail (Doc. 1). The claim related to his arrest (Count 1) was severed into a new case and the instant case encompasses the claims regarding his detention (Counts 2 through 7) (Doc. 8). Specifically, Plaintiff alleged that he was housed in "Lower Level B" at the Jail where other inmates subjected him to a six-hour attack in an attempt to retrieve drugs they believed he had swallowed (Doc. 1; Doc. 8). Following a threshold

review of the relevant Counts, Plaintiff was permitted to proceed in this action on the following two Counts:

> **Count 4:** Jane/John Doe 2 failed to monitor video equipment necessary to prevent, detect, or halt the attack on Plaintiff by other inmates that occurred in Lower Level B on or around March 22, 2019.
>
> **Count 5**: Jane/John Doe 3 either failed to tour Lower Level B to make regular safety checks on inmates or failed to intervene in the ongoing attack of Plaintiff that occurred in Lower Level B on or around March 22, 2019.

Plaintiff later identified Defendants John/Jane Doe 2 and 3 as one single officer at the Jail named Michael Fordson (Doc. 35).

Defendant Fordson filed a motion for summary judgment on the issue of exhaustion on December 22, 2021 (Doc. 48). Plaintiff filed a response in opposition to the motion for summary judgment (Doc. 52). Defendant Fordson then filed a reply brief in support of his motion (Doc. 57), as well as a response to the statement of additional facts put forth by Plaintiff (Doc. 60). After reviewing the parties' briefs, the Court determined there are no material issues of fact and a hearing is not necessary.

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment.

*E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). But when there are no material factual disputes, an evidentiary hearing is not necessary. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question"). Here, as previously stated there are no material facts in dispute and no hearing is required.

*Exhaustion*

The Prison Litigation Reform Act requires prisoners, including detainees in any jail, to exhaust all available administrative remedies before bringing a lawsuit about prison conditions. 42 U.S.C. § 1997e(a); *Kingsley v. Hendrickson*, 576 U.S. 389, 402 (2015) ("the Prison Litigation Reform Act of 1995 . . . which is designed to deter the filing of frivolous litigation against prison officials, applies to both pretrial detainees and convicted prisoners"). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Lockett*, 937 F.3d at 1025 (citation omitted).

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting, *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

As a detainee at the St. Clair County Jail, Plaintiff was required to follow the grievance process outlined in the Jail's Detainee Rules and Regulations manual—which is commonly referred to as the "Handbook"—to exhaust his claims (Docs. 48-1; Doc. 48-2, p. 11). The first step is to submit a Captain's Request (Doc. 48-1, pp. 2–3; Doc. 48-2, p. 11; *see also* Doc. 48-3). If the detainee is not satisfied with the response they receive to their Captain's Request, they must submit a Detainee Grievance Form (Doc. 48-1, p. 3; Doc. 48-2, p. 11; *see also* Doc. 48-43). These grievance forms "can be obtained from any supervisor or correctional officer" (Doc. 48-1, p. 3; Doc. 48-2, p. 11). The "immediate supervisor" provides a response to the grievance, and if the detainee is still not satisfied, they can submit the grievance to the Assistant Jail Superintendent through the on-duty shift supervisor (Doc. 48-2, p. 11). It appears that after the detainee receives the Assistant Superintendent's response, the detainee must then submit the grievance to the Jail Superintendent (*see Id.*). The Jail Superintendent will review all of the previous responses and either approve them or disapprove and revise the responses (*Id.*). The Jail

Superintendent's response shall constitute final resolution of the grievance (*Id.*)

### FINDINGS OF FACT

Plaintiff Jeremy Bray alleges that on the day he was booked into the St. Clair County Jail (the "Jail")—March 22, 2019—he was attacked by other inmates who were looking for drugs they believed Plaintiff had swallowed (Doc. 1; Doc. 8; Doc. 48-1, p. 3; Doc. 52, pp. 2–3). Plaintiff alleges officers at the Jail failed to notice or intervene in the attack and it went on for six hours (Doc. 1; Doc. 8). On the morning of March 23rd, an officer found Plaintiff "asleep" and bleeding (Doc. 48-6). Plaintiff was taken to the hospital, where his wound was treated and he was returned to the Jail (Doc. 1; Doc. 8; Doc. 48-6).

It is undisputed that Plaintiff received a copy of the St. Clair County Jail's Detainee Rules and Regulations, which contains the grievance procedure, when he was booked at the Jail (Doc. 48, p. 4; Doc. 52, p. 3). A search was conducted of the Captain's Requests and grievances received at the Jail during Plaintiff's time there (March 22, 2019 through July 17, 2019), and only one document submitted by Jeremy Bray was located (Doc. 48-1, pp. 3–4). The document is a Captain's Request dated May 14, 2019 and addressed to "Sgt. Shrubberger," whose name is actually Steve Stubberg (Doc. 48-5; Doc. 48-1, p. 4). Plaintiff admits he did not submit any other documents related to the grievance procedure while at the Jail (Doc. 52, p. 5). In the Captain's Request, Plaintiff stated, "I am writing in regards to the incident that happened to me, March 23rd when several inmates attacke [sic] me for 6 hours and beat me, after careful consideration of this matter I have decided that I would like to pursue criminal prosecution of the detainees." (Doc. 48-5). Sgt. Stubberg

responded a week later, writing "Just so we are clear, are you talking about the incident in LL-B where you brough methamphetamine into the jail? Please let me know." (*Id.*).

Plaintiff admits that he did not submit a grievance form after receiving Sgt. Stubberg's response to the Captain's Request (Doc. 52, p. 5). Plaintiff states that he was unsure whether Sgt. Stubberg's response was a resolution or final decision on the Captain's Request, and no grievance forms were given to him or made available to him (*Id.* at p. 7).

### DISCUSSION

Defendant argues that Plaintiff failed to exhaust his administrative remedies because the Captain's Request he submitted does not cover his claims in this case in that it does not mention any officers or identify a failure to protect as the nature of the wrong he wanted redressed (Doc. 48, pp. 8–11). Defendant also argues that even if the Captain's Request had addressed the nature of the wrong for which redress is sought in litigation, Plaintiff failed to complete the grievance procedure and fully exhaust the Request (Doc. 48, p. 12).

In response, Plaintiff makes two arguments. First, he admits that he did not exhaust his administrative remedies on his failure to protect claims prior to filing suit (Doc. 52, p. 11) ("Although Bray did submit one page, he did not exhaust administrative remedies prior to filing suit for such incident."), but argues that the police brutality and unlawful arrest that led to him being confined in St Clair County Jail do not fall under the PLRA and do not have to be exhausted, and therefore this suit should not be dismissed (Doc. 52, pp. 10–11). This argument is a non-starter because Plaintiff is not

proceeding in this action on any claims related to his arrest (*see* Doc. 8; Doc. 53). This action concerns only Plaintiff's failure to protect claims while he was detained at the St. Clair County Jail.

Plaintiff's second argument is that his failure to exhaust should be excused because the grievance process was rendered unavailable to him (Doc. 52, pp. 11–13). Specifically, he states that grievance forms "were not available to him" and argues that "it seems more likely than not that prison personnel denied him grievance forms" in light of the "arguably sarcastic" nature of Sgt. Strubberg's response to Plaintiff's Captain's Request (*Id.* at p. 13). He also argues that it was unclear from Sgt. Strubberg's response whether the Captain's Request was fully resolved, and he should move on to the next step of the grievance process (*Id.*). The Court, however, finds that it need not decide whether the grievance process was rendered unavailable to Plaintiff with respect to the Captain's Request he submitted. That is because the Captain's Request does not cover the conduct at issue in this case, and therefore it is immaterial whether Plaintiff was thwarted from pursuing the Request past the first stage of the grievance process.

The purpose of the exhaustion requirement is to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit. *E.g., Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). Here, the Jail's Handbook is not specific about the required contents of a grievance. *See* Doc. 48-2, p. 11 ("A grieving detainee shall . . . submit the grievance to the shift supervisor, in writing, informing him/her of the grievance and the particulars concerning it."). In this type of situation, the Seventh Circuit has held that "an inmate's complaint will suffice

for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress is sought.'" *Schillinger*, 954 F.3d at 995 (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). In other words, the grievance must "object intelligibly to some asserted shortcoming." *Strong*, 297 F.3d at 650.

Here, Plaintiff is proceeding in this case on two claims that Defendant Fordson did not monitor video equipment or conduct regular safety checks of the inmates and thus failed to discover or stop the March 2021 attack on Plaintiff (Doc. 8). But the Captain's Request submitted by Plaintiff does not even remotely suggest that he was complaining about an officer's failure to protect him (*see* Doc. 48-5). It does not mention Defendant Fordson by name or any other any officers; in fact, it does not even contain the word "officer" (*see id.*). It also does not contain any allegations that an officer failed to adequately monitor the detainees in "Lower Level B"; in fact, it does not even describe any actions that could be attributable to an officer at the Jail (*see id.*). Plaintiff simply indicates that he wants the inmates who attacked him to be criminally prosecuted (*see id.*). Consequently, Plaintiff's Captain's Request did not provide adequate notice of the failure-to-protect claims at issue in this case, and he has failed to exhaust his administrative remedies as to those claims. Defendant Fordson is entitled to summary judgment in this case.

## Conclusion

The motion for summary judgment on the issue of exhaustion filed by Defendant Michael Fordson (Doc. 48) is **GRANTED.** This case is **DISMISSED without prejudice**

for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

    **IT IS SO ORDERED.**

    **DATED: July 22, 2022**

                                                <u>s/ Mark A. Beatty</u>
                                                **MARK A. BEATTY**
                                                **United States Magistrate Judge**